**SERVICE WOMEN'S ACTION NETWORK, American Civil Liberties Union, and American Civil Liberties Union of Connecticut, Plaintiffs,**

v.

**DEPARTMENT OF DEFENSE and Department of Veterans Affairs, Defendants.**

**No. 3:11CV1534 (MRK).**

United States District Court, D. Connecticut.

May 14, 2012.

Lenora M. Lapidus, Sandra S. Park, American Civil Liberties Union, New York, NY, Michael J. Wishnie, Jerome N. Frank Legal Services, New Haven, CT, Sandra J. Staub, American Civil Liberties Union, Hartford, CT, for Plaintiffs.

Jonathan G. Cooper, U.S. Dept. of Justice, Washington, DC, for Defendants.

### *MEMORANDUM OF DECISION*

MARK R. KRAVITZ, District Judge.

The Service Women's Action Network, the American Civil Liberties Union, and the American Civil Liberties Union of Connecticut (collectively "Plaintiffs") bring this action against the Department of Defense and the Department of Veterans Affairs (collectively "Defendants"). Plaintiffs' Complaint [doc. # 1] states two claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*: (1) that Defendants' wrongful denial of requests for fee waivers violated Plaintiffs' rights under FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(III) and 5 U.S.C. § 552(a)(4)(A)(iii); and (2) that Defendants' failure to release responsive records violated Plaintiffs' rights to those records under FOIA, 5 U.S.C. § 552(a)(3)(A). Pending before the Court is Defendants' Motion for Summary Judgment [doc. # 26].

### I.

The Court assumes the parties' familiarity with the background facts of this case, discussed in more detail in this Court's recent related opinion. *See Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F.Supp.2d 231, No. 3:10cv1953 (MRK), 2012 WL 1067670 (D.Conn. Mar. 30, 2012). Additional facts, relevant only to this decision, are provided below based on the allegations in the Complaint [doc. # 1] and parties' Local Rule 56(a) Statements [docs. # 26–2, 27–1], exhibits, and affidavits. All of the facts recited below are undisputed unless otherwise noted, and the Court presents all facts "in the light most favorable to the nonmoving party"—here, Plaintiffs—after drawing "all reasonable inferences in [their] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000) (quotation marks omitted).

Service Women's Action Network ("SWAN") is a nonpartisan, nonprofit organization that supports, defends, and empowers current service women and female veterans through advocacy initiatives and community programs. American Civil Liberties Union ("ACLU") is a national, nonpartisan public interest organization of more than 500,000 members, dedicated to protecting the constitutional and civil rights of individuals. In recent years, the ACLU Women's Rights Project has worked at the local, state, and national levels to ensure governmental accountability for violence against women and girls through litigation, policy advocacy, and public education. ACLU of Connecticut is a non-profit, non-partisan membership organization dedicated to protecting individual civil rights and the principles of individual liberty embodied in the United States and Connecticut Constitutions.

The U.S. Department of Defense ("DoD") is the federal agency responsible for coordinating and supervising government activity relating directly to national security and the U.S. armed forces. The U.S. Department of Veterans Affairs ("VA") is the federal agency responsible for helping veterans by providing certain benefits and services.

In letters dated June 24, 2011, Plaintiffs submitted FOIA requests to five different DoD offices: the Department of the Navy, the Office of the Inspector General, the Department of the Air Force, the Department of the Army, and the Commandant of the Marine Corps. These letters provided:

Requesters seek the release of all and every underlying record [1] containing the following:

1. Requests by service members for the release of records relating to sexual assault ("SA"), equal opportunity ("EO"), sexual harassment ("SH"), and domestic violence ("DV") complaints, in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

2. Any complaint or report of an instance of alleged SA, EO, SH, and/or DV made by any service member in FY2006, FY2007, FY2008, FY2009, and/or FY2010 and the entire investigative or other file related to any such report or record, including but not limited to any records of investigation of such complaint, recommended or final disposition, or appeal or review of such report, investigation, or review.

3. Any record of any military-related incident of SH, EO, DV, and/or SA reported by service members in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

4. Any record of any sexual assault-related courts-martial in FY2006, FY2007, FY2008, FY2009, and/or FY2010, including but not limited to charges sworn in all sexual assault-related courts-martial, individual case files, judgments, sentences, and appeals.

Compl. [doc. # 1–2] Ex. A.

By July 26, 2011, Plaintiffs received denials of fee waivers regarding their requested information from each DoD office (including four from four Army offices: the U.S. Army Crime Records Center; the U.S. Army Medical Command; the Deputy Chief of Staff, G–1; and the Office of the Clerk of the Court). Each denial categorized Plaintiffs as an "other" requester and required advance payment of the estimated fees before the agency would further process the request.

Plaintiffs claim to have administratively appealed all decisions denying them fee waivers by August 16, 2011.[2] Plaintiffs challenged the denial of the fee waiver request and "other" classification, but did not challenge the validity of the fee estimates. By September 26, 2011, all administrative appeals had been denied.

In letters dated June 24, 2011, Plaintiffs submitted FOIA requests to the Veterans Benefits Administration ("VBA") and the Board of Veterans Appeals ("BVA"). These letters provided:

Requesters seek the release of all and every underlying record containing the following:

1. The entire claims file for each benefit claim filed, approved, reject-

---

**1.** A "record" was earlier defined in the request as "all records or communications preserved in electronic or written form, including but not limited to correspondences, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies." Compl. [doc. # 1–2] Ex. A.

**2.** Defendants maintain that Plaintiffs did not exhaust their administrative options with regard to the responses from the Army Deputy Chief of Staff, G–1, or the Army Clerk of Court. As the Court decides this motion on another basis, it need not reach this question.

ed, or remanded, in which was included a claim for disability benefits for Post–Traumatic Stress Disorder ("PTSD") in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

2. The entire claims file for benefit claims filed, approved, rejected, or remanded, in which was included a claim for disability benefits for depression and/or Major Depressive Disorder in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

3. The entire claims files for benefits claims filed, approved, rejected, or remanded in which was included a claim for disability benefits for anxiety in FY2006, FY2007, FY2008, FY2009, and/or FY2010.

Compl. [doc. # 1–3] Ex. B (providing the same definition for "record" as provided in the DoD requests).

On July 25, 2011, Plaintiffs received denials of fee waivers from both the VBA and the BVA. By letters dated August 16, 2011, Plaintiffs administratively appealed the VBA and BVA decisions. On September 15, 2011, Plaintiffs received denials of both appeals.

## II.

As with all motions for summary judgment, summary judgment in a FOIA case is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[ ] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(1)(A); Fed. R.Civ.P. 56(a).

## III.

There are three major types of fees associated with FOIA requests: search,

review, and duplication fees. A commercial requester must pay all three types of fees; an educational organization, noncommercial scientific institution, or representative of the news media must pay only duplication fees; and an "other" requester must pay search and duplication fees. FOIA also provides that an agency shall provide documents for free, or at a reduced cost, if the requester demonstrates that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The parties agree that Plaintiffs are not commercial requesters and are not requesting the information for their own commercial interests. The Court is therefore asked to evaluate whether Plaintiffs (1) qualify as a representative of the news media or as an "other" requester and (2) are entitled to the public interest waiver.

### A.

■ Defendants originally concluded that Plaintiffs were an "other" requester and that they therefore would need to pay both search and duplication fees. Despite Defendants' insistence on characterizing the Plaintiffs as SWAN alone, however, Plaintiffs include SWAN, the ACLU, and the ACLU Connecticut. Even assuming *arguendo* that SWAN is not a news representative, organizations like the ACLU are regularly granted news representative status. *See, e.g., ACLU of Wash. v. U.S. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D.Wash. Mar. 10, 2011) (finding that the ACLU of Washington was an entity that " 'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and

distributes that work to an audience.'" (quoting 5 U.S.C. § 552(a)(4)(A))). Plaintiffs have submitted an extensive list of past publications and adequately alleged that they intend to publish on this issue in the future. Under either a *de novo* or arbitrary and capricious standard of review, *see Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F.Supp.2d 54, 59 (D.D.C. 2002) (noting that courts are split on which standard applies), this Court finds that Plaintiffs, collectively, are representatives of the news media.

### B.

■■■ The United States Department of Justice has provided a four factor test to help agencies and courts evaluate when disclosure of the information is in the public interest:

1. Whether the subject of the requested records concerns the operations or activities of the government;
2. Whether the disclosure is likely to contribute to an understanding of the government's operations or activities;
3. Whether disclosure of the requested information will contribute to the public understanding; and
4. Whether the disclosure is likely to contribute significantly to the public understanding of government operations or activities.

*See* U.S. Dep't of Justice, "New Fee Waiver Policy Guidance" (Apr. 2, 1987), *reprinted in* FOIA Update, Vol. VIII, No. 1 (Winter/Spring 1987), http://www.justice.gov/oip/foia_updates/Vol_VIII_1/viii1page2.htm. Both the DoD and the VA follow this guidance and waive fees if all four factors are met. A court reviews agency determinations of fee waivers *de novo*, but this review is "limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). The requester bears the burden of showing that it is entitled to the waiver, *see*

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C.Cir.2004); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir.1994), but courts should interpret the fee waiver standard liberally for noncommercial requesters, *see Ferrigno v. U.S. Dep't of Homeland Sec.*, 2011 WL 1345168, at *5 (S.D.N.Y. Mar. 29, 2011).

### 1.

■■■ To satisfy the first requirement—that the subject of the requested records concerns the operations or activities of the government—a requester "must do more than simply assert that its request somehow relates to government operations." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 122 F.Supp.2d 13, 17 (D.D.C.2000). Instead, the "requesting party has the burden of explaining with reasonable specificity how and why the disclosure of this particular information will serve the public interest." *Judicial Watch, Inc.*, 185 F.Supp.2d at 61. It is more difficult for requests for third-party submissions to meet the requirements of the first factor, though it is not necessarily impossible. *See* 32 C.F.R. § 286.28(d)(3)(i)(A) (noting that third-party submissions sought for their intrinsic content will find it difficult to satisfy this factor); *Judicial Watch, Inc. v. Reno*, 2001 WL 1902811, at *10 (D.D.C. Mar. 30, 2001) (finding that "while the agency's responses to [letters from the public] are likely to contribute to public understanding of agency actions, the letters themselves do not shed any light on the operations and activities of the government").

■■■ With regard to their DoD requests, Plaintiffs have stated:

The disclosure will inform Requesters and the public of the prevalence of SA, EO, and SH complaints in the military, as well as of DoD's policies concerning

these issues. It is in the public's interest to know how DoD is responding to harassment and discrimination complaints related to sex and gender, whether the DoD responds differently to different types of complaints, and how effective those response efforts have been.

Compl. [doc. # 1–2] Ex. A.

Defendants argue that this explanation does not address the requests for service-member requests for records, court-martial records, or the portions of other requests seeking domestic violence records. Defendants also claim that, as a matter of law, Plaintiffs may not ask for records voluntarily submitted to the government by third parties (by which they mean the records of FOIA requests by service-members for certain types of files). Plaintiffs respond that they need to review individual complaints in order to evaluate how the government responds to such complaints and that domestic violence records are clearly within the scope of "harassment and discrimination complaints related to sex and gender."

Although this is a close call, the Court finds that the Plaintiffs have the better argument. *See Ferrigno,* 2011 WL 1345168, at *5. While significant information may already be public, it may not be aggregated in a manner that adequately addresses Plaintiffs' questions and concerns. The service-member requests for records, court-martial records, and domestic violence records are all relevant in evaluating how the government responds to different complaints and how effective those responses have been.

■ With regard to the VA requests, Plaintiffs have stated:

This disclosure will inform Requesters and the public of the prevalence of MST, PTSD, and other serious disabilities in the armed forces. The records will also highlight any disparities that exist in how benefits are distributed among disabilities, and reveal whether evidentiary regulations may be contributing to some of these disparities.

Compl. [doc. # 1–3] Ex. B.

Defendants argue that while some parts of a file might be relevant, the bulk of the file has medical and financial information that has nothing to do with Plaintiffs' stated reasons for their request. Plaintiffs counter that these files have a direct bearing on their interest, as medical information would inform them as to the nature of a claimant's disability and the government's justification for granting or denying benefits, and note that they have repeatedly stipulated that they do not request personally identifying information. Plaintiffs further argue that the fact that responsive materials include both substantive and non-substantive information is insufficient grounds to deny a fee waiver. *See Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 36 (D.C.Cir.1998) ("Congress presumably did not intend agencies to pick through responsive records to determine the percentage of the record that contains interesting morsels and to deem the remainder of the record irrelevant to public understanding. The more plausible reading of the statute is that once a given record is deemed to contain information warranting a waiver, all of the related pages … fall under the waiver even if each individual page would not independently qualify."). Again, the Court finds in Plaintiffs' favor on this factor, and therefore concludes that both the DoD and VA requests meet the first requirement for a public interest fee waiver.

2.

■ Plaintiffs' reasons for their FOIA requests, quoted above, are also relevant to evaluating whether the second factor—whether the disclosure is likely to contrib-

ute to an understanding of the government's operations or activities—is met.

Defendants argue that a single individual complaint will not reveal relevant information and that, if Plaintiffs intend to aggregate the results, such aggregation is unnecessary as it already exists in the public sphere. However, it is not evident that the publicly-available aggregations have been designed to answer Plaintiffs' questions. Accordingly, the Court finds that Plaintiffs have met the second requirement.

### 3.

■ The Court can assume the third factor—whether disclosure of the requested information will contribute to the public understanding—is satisfied, as it has already found that the Plaintiffs are news representatives.[3] *See, e.g.,* 28 C.F.R. § 16.11(k)(2)(iii).

### 4.

■ Finally, the Court must evaluate whether the disclosure is likely to contribute significantly to the public understanding of government operations or activities. While "a presumption of legitimacy attends government actions that may not be overcome on the basis of unsupported allegations," *Wood v. FBI,* 432 F.3d 78, 89 (2d Cir.2005), Plaintiffs raise troubling allegations, supported by reports and their own extensive experience on the subject, about the prevalence of and response to sexual assault and its associated psychological fallout in the U.S. military. This is not a case where the requests are "nothing more than bare allegations of malfeasance," *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice,* 602 F.Supp.2d 121, 128 (D.D.C.2009) (quotation marks and alteration omitted) (noting also that rejections of unsupported requests "impose only a minimal bar on plaintiffs"); rather, these requests are an attempt to get to the heart of an issue and contribute significantly to the public understanding. Accordingly, the Court finds that Plaintiffs have met the fourth requirement.

As Plaintiffs have satisfied the four factor test, the Court finds that they are entitled to the public interest fee waiver. For their case to survive Defendants' motion, however, Plaintiffs must also demonstrate that their request was reasonable.

### IV.

■ Although an agency must make a reasonable attempt to comply with a FOIA request, the requester must first "frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Judicial Watch, Inc. v. Export–Import Bank,* 108 F.Supp.2d 19, 27 (D.D.C.2000) (quotation marks omitted). An agency need not respond to a request that is "so broad as to impose an unreasonable burden upon the agency," such as one which "require[s] the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce,* 907 F.2d 203, 209 (D.C.Cir.1990); *see also Hal-*

---

**3.** The Court acknowledges that FOIA was never meant "to supplement or displace the rules of discovery." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 153, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Defendants contend that, at the time of the final administrative decisions, SWAN was a consultant for plaintiffs in a lawsuit seeking damages from former officials of the DoD for the way in which the department investigates and prosecutes sexual-assault complaints, and that its requests are therefore inappropriate. The Court does not find this argument persuasive, as SWAN was not itself a plaintiff in that case and as Plaintiffs' request for information is far more expansive than what would be necessary if SWAN was merely attempting to inappropriately gather additional discovery information.

 

*pern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) ("[A]n agency need not conduct a search that plainly is unduly burdensome.").

Defendants estimate that it would cost $44,988,623.00 to search for and duplicate the requested records. When the estimate includes the cost of reviewing the records of the VA, the total cost estimate swells to $128,061,593.00. Defendants estimate that the requests encompass more than 712,000 files (comprising over 272,000,000 pages), kept in several different locations. Finally, Defendants note that many of the files contain private information and would therefore need to be carefully reviewed, redacted, or possibly excluded from release. Defendants estimate this review could take upwards of 2,300 work years, where a work year has 2,080 hours (40 hours × 52 weeks).

Plaintiffs do not contest these estimates. Instead, they counter that Defendants grossly overestimate the amount Plaintiffs request—Plaintiffs note both that the Court may issue a limited fee waiver and that they are willing to limit their FOIA request to the terms outlined in the settlement offers to DoD and the VA.

After careful review of the record, the Court concludes that Plaintiffs' original request would have imposed an unreasonable burden on Defendants and that they need not respond. *See Am. Fed'n of Gov't Emps.*, 907 F.2d at 209. As the Court cannot evaluate the reasonableness of a limited fee waiver or Plaintiffs' modified request on the record, the Court grants Defendants' motion for summary judgment. Plaintiffs may file revised FOIA requests to obtain the information they seek.

## V.

Defendants' Motion for Summary Judgment [doc. # 26] is GRANTED. Although the Court concludes that Plaintiffs were entitled to the public interest fee waiver, their request for records was unreasonably broad. **The Clerk is directed to enter judgment and close the case.**

IT IS SO ORDERED.